NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0400n.06

Case No. 21-1664

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Sep 01, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| PAUL JOSEPH HARCZ, JR., et al., | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| BRODY BOUCHER, et al., | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| Defendants-Appellants. | ) | OPINION |
| | ) | |

Before: SUTTON, Chief Judge; BOGGS and READLER, Circuit Judges.

SUTTON, Chief Judge. Paul Harcz and other disability-rights advocates sought to protest what they perceived as an inappropriate location and setting of an event celebrating the passage of the Americans with Disabilities Act. State police prevented the protesters from approaching the event. Tensions flared, and Harcz was arrested. The protesters sued, alleging that their First Amendment rights had been violated. Harcz also brought Fourth Amendment and related state law claims. Viewing the evidence in a light most favorable to Harcz and the protesters, we agree that the police may have violated their clearly established rights. Because that is all that is needed to survive a motion for summary judgment, we affirm.

On September 17, 2015, several groups planned an event to commemorate the 25th anniversary of the Americans with Disabilities Act. Paul Harcz and some others were not satisfied. They questioned why the event was held at the Michigan State Capitol, a space that they believed

did not comply with ADA requirements, and they took issue with several of the event's sponsors. The event organizers got wind of the protesters' concerns and learned that they intended to protest the event. They contacted the Michigan State Police to alert them of the potential disruption. Sergeant Jeffrey Held consulted with the event organizers and formulated a plan to reroute any protesters to a different area of the Capitol grounds.

On the day of the event, the police approached Harcz and his colleagues across the street from the Capitol. The protesters carried signs and leaflets. Police informed them that they would not be allowed into the event area and would need to move their protest elsewhere. The protesters responded that they intended to demonstrate peacefully and wanted to enter. Attempts at a resolution between the parties and the police failed.

Tensions mounted. Several of the police defendants stood in a line and used metal barriers to prevent the protesters from entering the event. At some point, Harcz announced his intention to breach the police barrier. That attempt led to a short scuffle caught on body cam and to Harcz's arrest for felonious assault. Prosecutors ultimately dropped the charges.

The protesters sued the officers and event organizers under 42 U.S.C. § 1983. They alleged that the officers and organizers violated their First Amendment rights by refusing entrance to the ADA event. Harcz separately alleged false imprisonment, false arrest, and malicious prosecution under federal and state law. The officers moved to dismiss, and the district court granted the motion on all claims. *Harcz v. Boucher*, 300 F. Supp. 3d 945 (W.D. Mich. 2018).

A panel of this court affirmed in part and reversed in part. *Harcz v. Boucher*, 763 F. App'x 536, 545 (6th Cir. 2019). It affirmed the dismissal of the claims against the event organizers because the protesters did not allege facts sufficient to show that they acted under color of law in conspiracy with the state police. *Id.* at 540–41. But it reversed the dismissal of the claims against

the police officers, reasoning that the protesters plausibly alleged a violation of a clearly established First Amendment right. *Id.* at 541–44. It also reversed the dismissal of Harcz's individual claims, holding that he plausibly alleged that the officers lacked probable cause to arrest him. *Id.* at 544–45.

On remand, the parties moved forward with discovery, but "the crux of the case remain[ed] the same." *Harcz v. Boucher*, No. 1:17-cv-112, 2021 WL 4476942, at *8 (W.D. Mich. Sept. 30, 2021). This time around, the district court, after invoking our decision and after reviewing the evidence produced in discovery, denied the officers' motion for summary judgment based on qualified immunity. *Id.* at *10. It held that there was a genuine issue of fact about whether the officers' actions were content neutral, whether they served a significant government interest, and whether they left sufficient alternative means of communication. *Id.* It also denied the officers' motion for summary judgment on Harcz's individual claims. *Id.* at *10–13. The officers appealed.

This is the second appeal in this case. Having reviewed the parties' briefs and the record, we have little to add to this court's prior decision and the district court's thoughtful and well-reasoned decision on remand. We rely on the district court's recent decision in affirming the judgment and incorporate it by reference. We write further only to highlight and expand on two features of this qualified-immunity case.

*Free-speech violation.* The officers insist that they prevented the protesters from entering the event because of the threat posed to public safety, not because of the content of the protesters' speech. But there is plenty of evidence from which a jury could conclude that the officers' actions were directed at the content of the protesters' speech. When the initial callers informed the event organizers of the protest, for example, they said it would be a "peaceful protest," not a "violent" one. R.95-14 at 3; R.95-16 at 4. Sergeant Held's deposition testimony suggests that he planned

3

to exclude the protesters at the direction of the event organizers because they were not a part of the group's message. R.95-15 at 9 ("So, I wanted her to decide if she wanted to have a separate celebration and not invite the protesters or if she wanted to invite them in."). A police incident report describes a similar basis for excluding the protesters. R.95-16 at 5 ("We agreed that I would allow them to protest on the other side of the Austin Blair Statue, and they would not be allowed into the main area of the event, near the East Steps.").

In addition to the lack of content neutrality of the officers' action, the protesters' evidence also undercuts the officers' assertion that their actions amounted to permissible time, place, and manner restrictions. A restriction imposed on speech must be "narrowly tailored to serve a significant government interest." *Saieg v. City of Dearborn*, 641 F.3d 727, 735 (6th Cir. 2011) (quoting *M.A.L. ex rel. M.L. v. Kinsland*, 543 F.3d 841, 850 (6th Cir. 2008)). But here a conflict in the evidence emerges over whether the officers had a legitimate justification to prevent the protesters from entering. The officers, sure enough, raised several possible explanations for their actions, all premised on protecting public safety and preventing violations of the event organizers' rights. But when viewing the evidence in the light most favorable to the protesters, those justifications generate fact disputes for juries, not matter-of-law determinations for judges. Several of the protesters explained in deposition testimony that they intended to protest peacefully and non-obtrusively. Police communications prior to the event also suggested the benign nature of the protest. Even the police report after the event seemed concerned with disruption and not public safety.

The video evidence does not clarify matters in either direction. As the prior panel and district court concluded, the video footage does not conclusively resolve these fact disputes. Much of it begins well after the officers initially encountered the protesters. While the video shows how

4

the protesters reacted after being denied access, it does not capture the lead-in to the protest. All in all, it is not the type of clearly contradictory video evidence that causes us to disregard the protesters' evidence-backed allegations. *See, e.g.*, *Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

*Clearly established free-speech law.* The officers' arguments that the law in this area was not clearly established faces an imposing hurdle. In the last interlocutory appeal, a panel of this court unanimously held that a protester's right to express their opposing views in a public forum was clearly established so long as they were not disruptive and did not pose a threat to public safety. *Harcz*, 763 F. App'x at 543–44.

True, the prior panel reviewed a motion to dismiss. True also, the prior panel was obliged to accept the protesters' allegations as accurate in determining if the officers violated clearly established law. *Id.* at 543. Even so, this time around we still must review the protesters' record-supported facts in the light most favorable to them. *Bays v. Montmorency Cnty.*, 874 F.3d 264, 268 (6th Cir. 2017). And they used discovery to back up the material allegations in their complaint, the same allegations that met the "clearly established" hurdle in the last appeal.

The officers, to be sure, could impose time, place, and manner restrictions on the protesters in the interest of public safety or crowd control. *Saieg*, 641 F.3d at 736. For instance, they might enforce a permit to use a public area indicating that event organizers can constrain access. *See id.* at 737–38. But those concerns must have been real, not conjectural and not abstract. *Bays v. City of Fairborn*, 668 F.3d 814, 823 (6th Cir. 2012). Event organizers and the police may not force a protester to leave simply because they disagree with the protester's message. *See id.* In this instance, the protesters allege that, at the time the officers prevented them from protesting, their goal was only to object to the event in unobtrusive and safe ways and that the officers had no legitimate reason to think otherwise. A reasonable jury could agree.

While it *is* clearly established that organizers and officers may not keep people holding contrary views out of a public event, *id.* at 821, it *is not* clearly established that law enforcement must accept protesters' claims that they will be non-disruptive. But here, the protesters deny any plan to disrupt the proceedings. Though the organizers and police are not required to accept the statement at face value, the mere possibility of actionable disruption only creates a fact dispute. A jury may find contemporary concerns about disruption or safety to have been wholly unwarranted or wholly warranted.

For these reasons, those identified in the last appeal, and those identified in the district court's decision currently on appeal, we affirm. Plaintiffs' motion for sanctions under Appellate Rule 38 is denied, as we do not view the appeal as frivolous. *See Waeschle v. Dragovic*, 687 F.3d 292, 296 (6th Cir. 2012) (per curiam).